**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**GENERAL SHOE CORPORATION,
Defendant-Appellee.**

**No. 13914.**

United States Court of Appeals
Sixth Circuit.

Sept. 2, 1960.

Meyer Rothwacks, Washington, D. C., for appellant, Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Davis O. Walter, Attys., Dept. of Justice, Washington, D. C., and Fred Elledge, Jr., U. S. Atty., Nashville, Tenn., on the brief.

William Waller, Nashville, Tenn., for appellee.

Before McALLISTER, Chief Judge, POPE, Circuit Judge, and THORNTON, District Judge.

THORNTON, District Judge.

The facts in this tax case are not in dispute in any degree important to disposition on appeal.

The issue here for determination is new to this Court except perhaps for an apparent similarity between it and that present in a case decided by this Court May 31, 1960.[1] We believe that there is a distinction of a fundamental nature between that case and this one. We shall advert to this distinction later on in this opinion.

For purposes of this appeal, a broad outline of the facts will suffice. In view of our treatment of the problem, we deem it unnecessary to go into the details which the District Court necessarily had

1. Commissioner of Internal Revenue v. Marshman, et al., 6 Cir., 279 F.2d 27.

to include in his findings of fact and conclusions of law. We affirm those findings. They constitute an excellent presentation of the factual background which revolves around the plan of appellee, hereafter referred to as the taxpayer, to create a pension or retirement trust for the benefit of its employees. The taxpayer did, in fact execute such a plan which consists of a trust to which the taxpayer contributed assets. We are here concerned with assets contributed during the fiscal years 1951 and 1952, and taken as deductions by the taxpayer on its corpoate tax returns for such years. These assets consisted of two parcels of real estate located at or near Atlanta, Georgia, appraised at $160,000 and $250,-000, respectively, at about the time of the contributions. Another parcel in Atlanta was contributed, and its value was determined to be $37,500 (based on the sale of it by the trust). The last such contribution with which we are concerned is real estate located at Huntsville, Alabama, and appraised at $600,000. The appellant, hereafter referred to as the Government, put in issue by amended answer (1) these market values, (2) whether they were actually contributed to the trust during the taxable years for which deductions were taken, and (3) whether the trust was a qualified trust "exempt from taxation under Section 165(a), Internal Revenue Code of 1939, so that contributions are deductible under Section 23(p), [26 U.S.C.A. §§ 23(p), 165(a)]." The District Court found, and we think correctly, for the taxpayer on all three questions. The Government accepts such findings for purposes of this appeal so we will not concern ourselves with them. We observe, however, that these findings have been most carefully prepared.

In its conclusions of law, the District Court concludes as follows, and we quote the six paragraphs comprising the conclusions:

## "Conclusions of Law

"1. The Court has jurisdiction of the parties and subject matter herein by virtue of Section 7422 of the Internal Revenue Code of 1954, [26 U.S.C.A. § 7422], and Sections 1340 and 1346, Title 28, United States Code.

"2. Plaintiff's Employees Retirement Trust complied with the provisions of Section 165(a) of the Internal Revenue Code of 1939, with the result that contributions to the trust by plaintiff in the years ending October 31, 1951 and October 31, 1952, respectively, were properly deductible under Section 23(p). The law does not require that the employer have a legal obligation to make contributions to a trust in order for the trust to be exempt. Lincoln Electric Co. Employees' Profit Sharing Trust, et al. v. Commissioner of Internal Revenue (C.A. 6, 1951), 190 F.2d 326. Having made no misrepresentation to the Treasury Department, it was an abuse of discretion to rule in 1958 that the plan and trust did not conform to Section 165(a). H. S. D. Co. v. Kavanagh (C.A.6, 1951), 191 F. 2d 831. The ruling letter of February 11, 1958, holding that the plan does not meet the requirements of Section 165(a) of the 1939 Internal Revenue Code of Section 401 (a) of the 1954 Code [26 U.S.C.A. § 401(a)], and that the trust is not qualified under said sections and is not exempt from taxation was based on an erroneous view of the law and is of no effect.

"3. The plaintiff was entitled to the deductions on its income tax returns for the years ending October 31, 1951 and October 31, 1952, respectively, representing the fair market values of the properties contributed to the trust, to wit: $160,-000 for the Lawrenceville, Georgia property and $250,000 for the Caroline Street, Atlanta, property, in 1951, and $37,500 for the Yonge Street, Atlanta, property, and $600,-000 for the Huntsville, Alabama property in 1952.

"4. Section 111(a), Internal Revenue Code of 1939 [26 U.S.C.A. § 111

(a)] provides that the 'gain from the sale or other disposition of property' [which is included in the definition of 'gross income' contained in Section 22(a)] 'shall be the excess of the amount realized therefrom over the adjusted basis. . . .' Section 111(b) provides:

" 'Amount Realized. The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.'

In contributing these properties to the trust, the plaintiff did not receive any money, and did not receive the equivalent of money since no debt or legal obligation was discharged; it did not receive any 'property' having 'fair market value' within the meaning of said section; and hence there was no 'amount realized' from the contributions to the trust. That being the case, there was no taxable gain.

"5. The case of International Freighting Corporation v. Commissioner of Internal Revenue, 2d Cir., 135 F.2d 310, relied on by the defendant, should not in the opinion of the Court be followed or applied in the present case. A careful analysis of the opinion in that case compels the conclusion that the Court lost sight of the statute requiring as a prerequisite to liability for a capital gains tax receipt by the taxpayer of either 'money' or 'property.' The decision was based upon the court's theory of consideration, which theory itself is subject to question, rather than upon the receipt of 'property' as required by the basic statute. It is not contended, of course, that the taxpayer received 'money,' nor is the Court able to find from the facts of the case that it received 'property' within the meaning of the statute, whatever may be said about consideration. While the decision of the Court of Appeals of another circuit is persuasive, it should not be followed where it is clear that the decision itself constitutes a departure from the controlling statute.

"6. Plaintiff is entitled to judgment for the amount of taxes paid by it as the result of the erroneous assessment of capital gains taxes on the contributions of real estate to its Employees Retirement Trust, plus the interest paid by plaintiff on said amount, and also for interest as allowed by law, and for allowable costs."

■ We find ourselves in complete agreement with the District Judge in his conclusions of law numbered 1, 2 and 3. We think the law is clearly to the effect that a pension or retirement plan such as was here established complied with the Code so as to enable the taxpayer to deduct [under Section 23(p)] contributions made by the taxpayer to the trust. The fact that the taxpayer was not obligated in this respect does not preclude it from taking the deduction, nor the trust income from being exempt from taxation. The District Court made proper conclusions of law in this respect. This Court, in Lincoln Electric Co. v. Commissioner, 6 Cir., 190 F.2d 326, determined the *exemption* issue, and in Lincoln Electric Co. v. Commissioner, 6 Cir., 162 F.2d 379, [9 A.L.R.2d 272], determined the *deduction* one in opinions written by Judge Simons. In an opinion written by Judge Miller of this Court in 1950,[2] the same reasoning is applied as in the earlier Lincoln Electric case cited, and the same conclusion is reached re deductibility from gross income as an ordinary and necessary business expense.

It is with the conclusions of law numbered 4–6 that we find ourselves in disagreement with the court below, and as to which we must reverse.

■ A few details of factual background as to the capital gains feature of

2. Commissioner of Internal Revenue v. Surface Combustion Corp., 6 Cir., 181 F.2d 444.

the case, as distinct from the trust-contribution-deduction feature, are here in order. When the taxpayer made the real estate contributions to the trust, it took deductions on its corporate income taxes in the amounts of the appraised values of these properties. These deductions were allowed, but a capital gains tax was assessed, measured by the difference between the assessed valuation (or fair market value) and the basis. The taxpayer paid these capital gains taxes and filed timely claims for refund. Said claims were disallowed and this action is the result. The District Court agreed with the taxpayer that it had not realized a *taxable* capital gain. We believe that this was an erroneous view of the law. We think that the rationale of International Freighting Corporation v. Commissioner of Internal Revenue, 2d Cir., 135 F.2d 310 is persuasive. We recognize, of course, that the decision there is not controlling, and we do not here hold that the court below was bound by it as such. We can hardly state the rationale of that decision better than Judge Frank did in his short succinct opinion in Freighting. When the taxpayer *here* made the contributions to the trust it was entitled to take, and did take deductions for such contributions as "ordinary and necessary" expenses. When the taxpayer evaluated the contributions on the basis of the then current market value and used those figures for its deductions, it then realized capital gain to the extent that such values exceeded *its* basis. There is no gainsaying this logic. The tax statutes do not operate in theory—they are practical. The disposition of the real estate by the taxpayer resulted in an "amount realized" within the meaning of Section 111(b)—

> "Amount realized. The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."

The taxpayer realized exactly the same gain here by transferring the real estate as it would have had it sold the real estate for the fair market (or appraised) value and contributed the funds to the trust. Would the taxpayer say that if it had sold the real estate that there would have been no taxable capital gain in this situation? Can a taxpayer circumvent the capital gains tax by such a simple device? In Helvering v. Horst, 311 U.S. 112, 115, 61 S.Ct. 144, 146, 85 L.Ed. 75 the court says that "Where the taxpayer does not receive payment of income in money or property realization may occur when the last step is taken by which he obtains the fruition of the economic gain which has already accrued to him." In Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 119, 50 S. Ct. 273, 274, 74 L.Ed. 733 Mr. Chief Justice Hughes, directing his attention to the issue of the reasonableness of extra compensation for work done, referred to payments made "as a matter of internal policy having appropriate regard to the advantage of recognition of skill and fidelity as a stimulus to continued effort." Surely the same considerations are present in relation to a plan whose purpose is as stated in the present case:

> "Article I: Purpose
>
> "The purpose of this Plan is to provide for the accumulation of a fund to pay annuities to regular employees of the Corporation upon retirement because of age or disability after a period of faithful service with the Corporation, and to supplement the benefits provided under the
>
> Federal Social Security Act."

The theory of economic gain comes into play. To argue, as the taxpayer does here, that there can be no gain because nothing is realized, is unrealistic. Literally the taxpayer is correct in its contention that it did not receive a tangible benefit . . . however, we do not conceive that in this day and age we are restricted to tangibles in tax matters where there is actual recognizable benefit, albeit intangible, the taxation of which is implicit in the statutory scheme, and where such benefit is clearly capable of being evaluated on an objective basis. It is at this point in our discussion of

this case that we deem it pertinent to distinguish the Marshman case decided by this Court May 31, 1960. The differences are fundamental and the similarities superficial. The instant case and the Marshman case have a common meeting ground retroactively, so to speak. In no respect do we believe there exists any real conflict. The retroactive meeting ground is Freighting[3] for the reason that it presents a factual picture closely analogous to the one here. It cites in support of its legal conclusion re taxable capital gain the Mesta[4] and the Halliwell[5] cases, and also Kenan v. Commissioner, 2 Cir., 114 F.2d 217. In Marshman, supra, this Court disagrees with Mesta and Halliwell, those cases having dealt with property settlements in divorce actions. The Kenan case is not subject to the same infirmity, however, and is valid support for the taxable gain rationale in Freighting, which has direct application to the instant case. We reiterate what Judge Miller of this Court said in Marshman [279 F.2d 27, 33] that if the property *received* "has no fair market value, or if such fair market value has not been shown, it may be economic gain but it is not taxable gain by reason of the express provisions of Section 111(b)." Marshman, as well as Mesta and Halliwell, involved a property settlement in a divorce action. Quoting from Judge Miller's opinion again:

"A property settlement in a divorce proceeding is usually influenced and often dictated by numerous intangible, personal and practical considerations which play no part in a transaction between a willing seller and a willing buyer in the open market. The value of what is given up is no criterion of the fair market value of the 'property' received."

The truth of this observation is, of course, readily apparent. How different are the facts here. The value of what was given up here bears a direct relationship to the fair value of the "property" received. The "property" received is an economic gain to the taxpayer of exactly the market or assessed valuation which the taxpayer used as a deduction on its income tax returns. Again, in the Marshman case, this Court cites Helvering v. Horst, supra, and points out that the Supreme Court there was dealing with "the *realization* of economic gain, not the *valuation* of such gain." The difficulty inherent in the application of the economic gain theory in Mesta, in Halliwell, and in Marshman is directly related to the *valuation* of the gain rather than its *realization*. That difficulty is readily overcome in the matter herein. This is an arm's length situation. Emotional factors are not involved. The measurement of the intangible benefits is easily reduced to dollars and cents. We do not here have the Marshman "insurmountable obstacle to the application of Section 22(f) in conjunction with Section 111(a) and (b)." We experience no difficulty in accepting as the fair market value of the property received by the taxpayer the appraised valuation which the taxpayer took as a deduction on its income tax returns. *This is consistent* with the statement of Judge Miller in Marshman that "Under long established rulings fair market value is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell. * * * A single transaction between a husband and wife made under the emotion, tension and practical necessities involved in a divorce proceeding does not comply with this rule." We have quoted the foregoing in order to point up the width of the gulf between the considerations entering into *valuation* of transfers made in cases like Mesta, Halliwell and Marshman compared to the valuation of those effected in Freighting and in the instant case.

3. Supra, 135 F.2d 310.

4. Commissioner of Internal Revenue **v.** Mesta, 3 Cir., 123 F.2d 986.

5. Commissioner v. Halliwell, 2 Cir., 131 F. 2d 642.

In accordance with the foregoing reasoning, we are of the opinion that the determination of the District Court that the taxpayer did not realize a taxable gain when it made the transfers and took the deduction for their fair market value was an erroneous one. The decision is therefore reversed and the judgment of the court below vacated.